UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOEL S. WOLINSKY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-3144 |
| | § | |
| OAK TREE IMAGING, LP, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

This suit presents an issue of first impression at the fringe of supplemental and bankruptcy jurisdiction: Can a district court exercise jurisdiction over a withdrawn adversary proceeding's state law claims that supplement the federal bankruptcy claim in another court? This precise question has not been addressed in plaintiff's motion to remand, Dkt. 5, or defendant's response, Dkt. 7, but this court has an independent and continuing duty to examine whether a case comes within its subject-matter jurisdiction. *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244 (2006). And "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2000). Pursuant to this duty, the court finds that it is unlikely that it *could* exercise supplemental jurisdiction over this suit, but it need not decide this issue today. The court, in its discretion, declines to exercise supplemental jurisdiction to the extent it may exist, and without such jurisdiction, the adversary claims lack any independent jurisdictional basis to remain in federal court. *See United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) (holding that each action requires an independent jurisdictional basis to confer power upon the federal court to hear that case). Accordingly, plaintiff's motion to remand is GRANTED.

## II. Factual Background

The court will briefly summarize the relevant facts as pleaded in plaintiff's original petition. Drs. Wolinsky, the plaintiff, and Liberoni, the defendant, are both medical practitioners with separate medical practices. Wolinsky specializes in neurology and electromyography, while Liberoni specializes in internal medicine. At some time in 2003, Liberoni offered Wolinsky a chance to invest in a partnership for diagnostic imaging services in Bay City, Texas. In September 2003, the parties consummated the arrangement, forming Oak Tree Imaging, L.P. and Oak Tree Management, LLC to act as the general partner. Wolinsky invested $50,000 in this venture and received a 33.33% interest; Liberoni contributed $100,000 to the partnership and received a 66.66% interest.

In October 2003, Liberoni deposited $151,000 ($50,000 of which was designated as Wolinsky's contribution) into the general partner's bank account. Shortly thereafter Liberoni used $150,000 of the partnership funds as a down payment towards the purchase of a refurbished 1996 MRI scanner. The MRI cost the partnership $580,000, and it was financed through a four-year capital lease provided by Citicorp Vendor Finance, Inc. ("Citicorp"). A month later, Citicorp refunded $50,000 into the general partner's account and revised the terms of the lease, including a reduction of the down payment to $100,000. The partnership's new capital lease was executed in the name of "Barry J. Liberoni, M.D., P.A. d/b/a Oak Tree Imaging." Furthermore, although partnership assets were used to secure the lease, at the end of the term, Liberoni *himself* had the right to purchase the MRI from Citicorp for the nominal sum of $1.00. Liberoni now claims that under these terms, the $100,000 down payment came in full from his partnership investment and renders him the owner of the MRI equipment.

At any rate, in January 2004 Liberoni purchased another piece of equipment, an EEG machine, allegedly on behalf of the partnership. Liberoni made repeated assurances to Wolinsky that the EEG was an asset of the partnership, but Liberoni personally collected all of the revenues generated by the machine's operations. Just as Liberoni now claims that the MRI is his own personal property, he also asserts that he owns the EEG machine and that it is not an asset of the partnership. By contrast, in March 2004 Liberoni purchased the only major asset for the partnership whose ownership is not in dispute, an X-ray machine, for $6,500. In fact, Liberoni claims that the X-ray machine is the only item of equipment that the *partnership* itself owns.

### III. PROCEDURAL HISTORY

On account of Liberoni's conduct, Wolinsky filed the instant suit on June 26, 2006, styled *Dr. Joel S. Wolinsky v. Oak Tree Imaging*, *L.P. & Dr. Barry Liberoni, M.D.*, in the 234th Judicial District Court of Harris County, Texas (the "state court suit"). Wolinsky asserted several state-law causes of action, including, *inter alia*, gross negligence, self-dealing, breach of fiduciary duty, fraud, and a claim for injunctive relief to prevent dissolution of the partnership. On June 29, at 4:21 p.m., Wolinsky nonsuited the partnership in the state court suit. Less than an hour later, the partnership filed a petition for Chapter 7 bankruptcy protection in the federal bankruptcy court for the Southern District of Texas, Victoria Division. Then, on June 30, 2006, Liberoni responded to the state court suit, asserting a general denial, affirmative defenses, and a counterclaim against Wolinsky and against the partnership's general partner (Oak Tree Management LLC) as a third-party defendant. Liberoni requested that the court impose equitable relief under Texas state law to define the relationship between the parties and the existence and status of any agreements and other documents which may be personally binding on either party. Thus, as of June 30, 2006, the partnership had

3

initiated bankruptcy proceedings in Victoria, Texas, and Drs. Wolinski and Liberoni as well as Oak Tree Management LLC were involved in a state court suit in Harris County, Texas resting entirely on state law.

One week later, on July 5, 2006, Liberoni removed the state court suit to the federal bankruptcy court in Victoria as an adversary proceeding within the underlying Chapter 7 bankruptcy case.[1]  Liberoni alleged in his notice of removal that the bankruptcy court had jurisdiction over the matter inasmuch as the debtor partnership was a necessary and indispensable party to the action and that the action was a "core proceeding."[2]  Liberoni does not cite any statute or relevant case law allowing removal of such an action, but he presumably removed the suit pursuant to 28 U.S.C. § 1452(a).  This statute permits removal of a claim to the district court if such claim is within the court's bankruptcy jurisdiction, including claims that are "related to" a bankruptcy proceeding under Title 11 of the United States Code.  *See id.* § 1334(b) (conferring original, but not exclusive, jurisdiction upon the district court for actions "related to" cases under Title 11).  In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate."  *See In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995) (internal quotation marks omitted); *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  And "any effect" includes any

---

[1] Although the district courts have original jurisdiction over suits that are related to bankruptcy cases, *see* 28 U.S.C. § 1334(b), the Southern District of Texas automatically refers all bankruptcy-related matters, including the instant suit, to the bankruptcy court for this district. *See* Gen. Order 2005-6 (S.D. Tex. Mar. 10, 2005); § 157(a) (permitting district courts to refer all bankruptcy proceedings to the bankruptcy court).

[2] The United States Code defines core proceedings quite broadly in a variety of ways.  *See* 28 U.S.C. § 157(b)(2).  While Liberoni does not specify why the state court suit is a core proceeding, his understanding is most defensible under the catchall definition of a "core proceeding," which "include[s] . . . matters concerning the administration of the estate."  *See* § 157(b)(2)(A).

4

alteration of the "debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Walker*, 51 F.3d at 569 (internal quotation marks omitted). As Liberoni alleged that the debtor was a necessary and indispensable party, he likely believed that the state court suit would have an "effect" on the debtor's estate and thus place the action within the bankruptcy court's "related to" jurisdiction to justify removal to the federal court.

Nevertheless, after removal, Wolinsky filed a motion to remand in Judge Steen's bankruptcy court in which he contended that the adversary involves personal matters between the individual parties and bore no relation to the estate of the debtor partnership. Dkt. 5 at 3–4. Although Judge Steen did not rule on the motion to remand, he apparently rejected this argument in part, because he lifted the bankruptcy stay and allowed the debtor to be added to the adversary as a defendant. Bankr. Proceeding 06-80348, Dkt. 10 at 1. This move would seem to confer bankruptcy jurisdiction over the adversary, as the insertion of the debtor as a defendant arguably produces a conceivable effect on the estate's liabilities and renders the adversary a proceeding "related to" the Chapter 7 case. Surprisingly, though, Judge Steen's separate order on the same date found that the adversary's claims were not within the bankruptcy jurisdiction of the federal courts. *See* Dkt. 1. Of particular note here, Judge Steen also added that the adversary proceeding fell within the supplemental jurisdiction of the federal courts. *Id.* Because bankruptcy courts cannot exercise supplemental jurisdiction in this circuit, *see Walker*, 51 F.3d at 573, Judge Steen recommended to the district court, on his own motion, a withdrawal of the reference of the adversary for a resolution of this suit. Dkt. 1; 28 U.S.C. § 157(d) (permitting the district courts to withdraw the reference of any bankruptcy proceeding,

5

including an adversary proceeding, "for cause shown").[3] The district court accepted Judge Steen's recommendation, withdrew the reference, and assigned the withdrawn proceeding to the undersigned. Dkt. 3. At the same time, Judge Steen transferred the Chapter 7 case to the Galveston Division of the Southern District of Texas, where that case is currently pending. *See* Bankr. Proceeding 06-80348, Dkt. 12 at 1.

### IV. ANALYSIS

As a threshold matter, the court need not decide whether it actually has supplemental jurisdiction over the state-law claims in the withdrawn adversary proceeding because the outcome will be the same whether the court has supplemental jurisdiction or not. First, even if this court could exercise supplemental jurisdiction over the adversary, it would decline to do so under its discretion conferred by Congress. *See* 28 U.S.C. § 1367(c) (vesting discretion in the district courts to decline to exercise supplemental jurisdiction under four well-defined circumstances). In the alternative, if this court lacks supplemental jurisdiction altogether, then this suit *must* be remanded because the court lacks any jurisdictional basis over the adversary. § 1447(c) (requiring the court to remand a removed action "at any time before final judgment" if the court lacks subject-matter jurisdiction over the case). Before explaining the court's reasoning on these matters, a quick review of the history of supplemental jurisdiction will be instructive.

---

[3] After the district court refers a suit to the bankruptcy court, the latter court generally recommends a withdrawal of the reference only upon motion of a party. However, the bankruptcy court may recommend a withdrawal of the reference *sua sponte*. *In re Moody*, 64 B.R. 594, 595 (Bankr. S.D. Tex. 1986). In this case, because the bankruptcy court lacked subject-matter jurisdiction to hear the suit, that court properly requested a withdrawal by the district court on its own motion because a lack of jurisdiction is certainly "cause" for a withdrawal under § 157(d). *See Arbaugh*, 546 U.S. at 1244 (emphasizing the duty of federal courts to continuously examine whether they have subject-matter jurisdiction over a claim).

### A. Supplemental Jurisdiction: From the Beginning

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966), the Supreme Court held that once a district court has original jurisdiction over some claims in an action, it may, but is not required to, exercise supplemental jurisdiction over other claims which together with the federal claims form one constitutional case or controversy. *Id.* at 725. According to the *Gibbs* Court,

> The state and federal claims must derive from a common nucleus of operative fact. [And] if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*Id.* (citation omitted). Reiterating that this power is discretionary, the Court stated that the district court's discretion to decline supplemental jurisdiction is informed by "considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* at 726.

In *Gibbs'*s wake, federal courts were frequently called upon to exercise this discretion when considering whether to assert supplemental jurisdiction over litigants' additional state-law claims. Some federal courts even expanded this principle to include not only the joinder of additional claims beyond the court's original jurisdiction, but also additional parties whose involvement with the proceeding formed a "common nucleus of operative fact." *See, e.g.*, *Lykins v. Pointer, Inc.*, 725 F.2d 645, 649 (11th Cir. 1984) (holding that in the context of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), the district court could exercise supplemental jurisdiction over claims by or against third-parties who were involved in one constitutional case); *Stewart v. United States*, 716 F.2d 755, 758 (10th Cir. 1982) (same). However, in 1989, the Supreme Court reversed this expansion and held that although federal courts can hear additional *claims* which supplement the

7

federal claims, the federal courts could not exercise supplemental jurisdiction over additional *parties*. *Finley v. United States*, 490 U.S. 545, 556, 109 S. Ct. 2003 (1989). The Court noted that such extension had not been congressionally authorized, and the Court refused to "read jurisdictional statutes broadly." *Id.* at 549.

The *Finley* Court explicitly recognized that Congress could amend those statutes to permit third parties to be added in this situation. *See id.* at 556 ("Whatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress."). And within a year, Congress passed the Judicial Improvements Act of 1990 which legislatively overruled *Finley*. *See* Pub. L. No. 101-650, § 310, 104 Stat. 5089, 5113–14 (1990); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2620 (2005) (recognizing Congress's repudiation of *Finley*'s holding through the passage of the Judicial Improvements Act). That Act enacted 28 U.S.C. § 1367, codifying the concept of supplemental jurisdiction first announced by *Gibbs* and extending the *Gibbs* principle to allow additional parties to be added to the litigation. *See* §310, 104 Stat. at 5113–14. Section 1367 provides, in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> . . .
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
>
>> (1) the claim raises a novel or complex issue of State law,
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

8

>
> (3) the district court has dismissed all claims over which it has original jurisdiction,
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367.

Accordingly, when evaluating any issue of supplemental jurisdiction, the district court must engage in a two-step process. First, the court must evaluate whether, in a civil action, the supplemental claim is so related to the claim or claims within the court's original jurisdiction that they form one case or controversy. *See* § 1367(a); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998). If the court answers this inquiry in the negative, then supplemental jurisdiction does not exist, and an independent basis for jurisdiction must exist for the claim to remain in federal court. *See O'Neil*, 709 F.2d at 368. On the other hand, if the court finds that the claims are sufficiently related to the action, the court "shall have supplemental jurisdiction," and such jurisdiction is mandatorily present. § 1367(a); *see, e.g.*, *Itar-Tass*, 140 F.3d at 447; *Exec. Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1555–56 (9th Cir. 1994); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) (Posner, J.). Second, even if the court has the undeniable *power* to hear the other claims over which it does not have original jurisdiction, the court may decline to exercise jurisdiction under four well-defined circumstances. *See* § 1367(c); *Itar-Tass*, 140 F.3d at 446. In sum, the court initially determines whether it *can* exercise jurisdiction over the supplemental claims, and if so, the court then decides whether it *should* exercise that jurisdiction.

With this understanding of § 1367, the court will now consider whether it can exercise supplemental jurisdiction over the state-law claims in this withdrawn adversary proceeding.

**B. Does Supplemental Jurisdiction Exist in This Case?**

Utilizing the analysis described above, the court must first determine if § 1367(a) is applicable to confer supplemental jurisdiction over the adversary's state-law claims. Under that subsection, "in any *civil action* of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." § 1367(a) (emphasis added). Neither party disputes that the claims within the adversary share common facts, and Judge Steen found that the adversary's "claims appear to be intimately related to the chapter 7 bankruptcy case." Dkt. 2. It is clear then that the federal and state claims at issue here share a "common nucleus of operative fact" and form one constitutional case or controversy. *Gibbs*, 383 U.S. at 725.

The issue up for debate, though, is whether the federal and state-law claims are part of one "civil action." *See* § 1367(a). On the one hand, despite its withdrawal by the district court, an adversary proceeding is but part of the larger bankruptcy case. *See* 28 U.S.C. § 157(d) (stating that a district court may withdraw, in whole or in *part*, any case or *proceeding* referred under this section (emphasis added)); *cf. Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995) ("The relation between an adversary proceeding based . . . exclusively on state law and the bankruptcy proceeding out of which it arises is functionally identical to that between a supplemental proceeding and the federal claim to which it is supplementary."). If this is the case, this court would have the power to hear the state-law claims within the adversary that supplement the bankruptcy case arising under federal law. *See* 28 U.S.C. § 1334(a) (conferring jurisdiction upon the federal courts to hear cases

under Title 11, i.e. cases which result from the filing of the bankruptcy petition); *see also In re Walker*, 51 F.3d at 568.

On the other hand, there are two main reasons to question whether § 1367 confers jurisdiction over state-law claims in an adversary proceeding in one court that supplement a federal bankruptcy claim in another court. First, the bankruptcy claim and the withdrawn adversary proceeding have already been separated and will proceed independently of one another, thus vitiating supplemental jurisdiction's goal of trying closely related claims in one "proceeding." *See Gibbs*, 383 U.S. at 726 (conferring power on the federal courts to hear the whole case when the litigant would be expected to try the federal and state claims in one "judicial proceeding"). In the analogous case of the severance of claims, the Fifth Circuit has held that the severed case must have its own jurisdictional basis, unconnected to the claim from which it derived. *See, e.g., Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 431–32 (5th Cir. 2005). Also, the adversary did not begin life in the bankruptcy court; it was originally filed by plaintiff as a separate action in the state district court and removed to the federal system. Upon removal, it was referred to the bankruptcy court as an "adversary proceeding" within the Chapter 7 case. The Federal Rules of Bankruptcy Procedure recognize such an adversary proceeding, defining it as "a claim or cause of action removed pursuant to 28 U.S.C. § 1452." *See* FED. R. BANKR. P. 7001(10) (2007). However, § 1452 only permits removal of cases in which the bankruptcy court has original jurisdiction. *See* § 1452(a). And as stated above, Bankruptcy Judge Steen has held that the adversary is outside of that jurisdiction. Dkt. 1. Thus, if the suit was originally not removable under § 1452, then this dispute can likely no longer be defined as an "adversary proceeding" and should be viewed as an independent cause of action.

Nonetheless, despite these compelling reasons that counsel against the possibility of supplemental jurisdiction in this instance, resolving this issue of first impression is not necessary to the court's decision today. As a result, the court will assume, without deciding, that it does have the power to exercise supplemental jurisdiction over the claims in this adversary proceeding.[4] Given this assumption, the court will now examine whether it in fact should exercise jurisdiction over the adversary.

### C. Should the Court Exercise Supplemental Jurisdiction?

Under § 1367(c), the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). In this instance, subsection (1) is inapplicable because the state-law claims of fraud, breach of fiduciary duty, and self-dealing cannot be said to raise "novel or complex issue[s] of State law." § 1367(c)(1). Also, subsection (3) is inapposite because the claim "over which [the district court] has original jurisdiction," the bankruptcy case, is still pending. § 1367(c)(3) (permitting a court to decline jurisdiction over other claims *after* the federal claim has been dismissed). Thus, the court will only consider whether it should decline to exercise jurisdiction because either (a) the state law claims "substantially predominate" over the federal claim, § 1367(c)(2); or (b) the court faces "exceptional circumstances" which lead the court to decline jurisdiction. § 1367(c)(4). These

---

[4] In the alternative, if the court determined that § 1367(a) did not apply to this suit, the same result would follow. Every civil action must have a basis of jurisdiction to remain in federal court. *O'Neil*, 709 F.2d at 368. Without bankruptcy or supplemental jurisdiction, this court has no jurisdiction to hear the adversary's claims and the suit must be remanded. § 1447(c).

possibilities will be addressed in turn.

**1. Do the state-law claims substantially predominate over the federal claim?**

Congress did not define when state-law claims "substantially predominate" over the related federal claim or claims. However, in *Gibbs*, which formed the basis for § 1367, the Supreme Court stated that "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *See Gibbs*, 383 U.S. at 726–27 (emphasis added). Thus, the court should closely examine the nature of the federal claims and the state claims before deciding the issue of substantial predominance.

*a. The Federal Claim*

The only federal claim here that can support supplemental jurisdiction is Oak Tree Imaging, L.P.'s Chapter 7 case itself. In order to test the relative weight of this claim, it is necessary to consider the two competing goals of bankruptcy law: (1) discharge of the debtor's outstanding obligations; and (2) satisfaction of valid claims against the estate. *See Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–55 (1915); *Fin. Sec. Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 188 B.R. 799, 807 (Bankr. E.D. La. 1995). The first goal is not applicable to Oak Tree Imaging, L.P., because partnerships are not eligible for discharge in Chapter 7 liquidation proceedings. *See* 11 U.S.C. § 727(a); *Liberty Trust Co. Employees Profit Sharing Trust v. Holt (In re Liberty Trust Co.)*, 130 B.R. 467, 471 (Bankr. W.D. Tex. 1991) (explaining that only individuals are eligible for discharge because Congress wanted to avoid the fraudulent use of corporate and other business entities).

As discharge is not possible for this debtor, the filing of Chapter 7 bankruptcy can only advance the purposes of bankruptcy law through the satisfaction of valid claims against the estate. Yet after reviewing the debtor's schedules filed with the bankruptcy court, it seems impossible for there to be any meaningful satisfaction of claims in this case. According to its filings, the debtor has approximately $9,000 in assets and over $350,000 in liabilities. *See* Bankr. Case No. 06-60097, Dkt. 5 at 1; *id.* Dkt. 20 at 1. Still, Dr. Liberoni contends in his response to the remand motion that the resolution of the adversary proceeding could determine whether this Chapter 7 is an asset or no-asset case. Liberoni does not elaborate on this argument, but presumably he is referencing the disputed ownership of the used MRI and EEG machines, which together are worth more than $400,000. If these machines actually belong to the partnership, then, as Liberoni seems to suggest in his response to the remand motion, the estate would have substantial assets to satisfy its creditors' claims and the case rightfully belongs in federal court. The debtor, though, did not claim ownership of these machines in its bankruptcy schedules, *see* 06-60097, Dkt. 5 at 3–7, and statements in the bankruptcy schedules constitute judicial admissions. *Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 2006). Therefore, despite Liberoni's protestations to the contrary, the debtor has admitted to minor assets that can only nominally satisfy its major liabilities. The court is convinced that this bankruptcy case only marginally advances the goals of federal bankruptcy law and, therefore, the only federal claim is insignificant. The court next considers whether the state claims predominate over this insubstantial federal claim.

### b. The State Claims

In contrast to the tenuous federal claim, the state-law claims in the adversary proceeding are quite substantial. In constructing the supplemental jurisdiction framework, the *Gibbs* Court

identified three instances when the state-law claims will substantially predominate: "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726. Here, as compared to the single, inconsequential federal bankruptcy claim, the state court suit contains many state-law causes of action, including gross negligence, self-dealing, breach of fiduciary duty, fraudulent inducement, and other claims for equitable relief. These state-law claims raise myriad factual issues for the court's consideration and therefore far outweigh the federal claim in terms of the "scope of the issues raised." *See id.* Thus, the court finds that it should decline supplemental jurisdiction (to the extent it may exist) over the multiple state-law claims, involving several disputed business transactions and possibly fraudulent conduct, for they substantially predominate over the one federal bankruptcy claim of dramatic insignificance. Exercising jurisdiction in this case would be tantamount to the federal tail wagging the state dog. This the court will not do.

**2. Exceptional Circumstances**

Alternatively, the court can also decline supplemental jurisdiction in "exceptional circumstances." § 1367(c)(4). The Fifth Circuit has not construed this phrase, but the Ninth Circuit considers this subsection the "catchall" provision for declining supplemental jurisdiction. *Exec. Software*, 24 F.3d at 1558. The Ninth Circuit has held that when district courts consider the catchall provision, the court must (1) articulate reasons why the circumstances are exceptional; and (2) inquire whether the balance of the *Gibbs* factors [economy, convenience, fairness, and comity] provide compelling reasons for declining jurisdiction in such circumstances.[5] *Id.*

---

[5] While this holding is not binding on a court within the Fifth Circuit, this court considers the framework helpful in deciding this issue and will analyze this suit under the Ninth Circuit's test.

15

### *a. Is this situation "exceptional"?*

The plain meaning of the term "exceptional" is "out of the ordinary: uncommon, rare." *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 791 (3d ed. 1986). In the instant case, the court has considered whether it should exercise jurisdiction over a purely state-law matter withdrawn from the bankruptcy court. No other court has considered whether an adversary that is withdrawn from the bankruptcy court in these circumstances is still part of one "action" with the pending bankruptcy claim to support supplemental jurisdiction. As a case of first impression, it seems almost self-evident that these circumstances are "out of the ordinary" and "uncommon." *Id.* The court therefore finds that this suit presents "exceptional circumstances." *See* § 1367(c)(4); *see also Exec. Software*, 24 F.3d at 1558.

### *b. The* Gibbs *Values*

Next, the court examines whether the *Gibbs* values favor declining jurisdiction. *Exec. Software*, 24 F.3d at 1558. The *Gibbs* Court held that in deciding whether to exercise supplemental jurisdiction, the court should consider the following four factors: judicial economy, convenience, fairness, and comity. *See Gibbs*, 383 U.S. at 726; *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (reaffirming the *Gibbs* factors as necessary in any decision regarding the remand of supplemental state claims). In this instance, remand of this adversary proceeding does not raise any issues regarding judicial economy or convenience to the litigants. Because the adversary has been withdrawn from the bankruptcy court, the parties must try both cases in separate forums no matter what this court decides today. Remand will not create further inefficiencies or inconveniences to the parties other than those they already must endure. Thus, the factors of judicial economy and convenience weigh neither for nor against remand.

However, with regard to fairness to the parties and comity, these factors weigh strongly in favor of remand. First, this suit began as a two-party dispute in state court with numerous state-law causes of action. It was then removed to federal court by the defendant as an adversary proceeding but was later found to be outside the bankruptcy court's jurisdiction. There is a strong flavor of forum shopping by the defendant, as the debtor did not file bankruptcy until immediately after the institution of this suit, and the maintenance of the debtor's bankruptcy filing is weakly related to any federal bankruptcy policy. The role of the bankruptcy courts is not to adjudicate two-party disputes, and this dispute would never have reached this court absent the defendant's attempt to manufacture jurisdiction through the vehicle of a bankruptcy filing. *See Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, No. 04-C-8053, 2005 U.S. Dist. LEXIS 19633, at *14 (N.D. Ill. Sept. 7, 2005) (affirming the bankruptcy court's dismissal of a suit that "had been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute" (internal quotation marks omitted)); *see also In re Fonke*, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004) (stating that courts have construed bankruptcy cases as filed in "bad faith" when the debtor has sought bankruptcy protection solely for the resolution of a two-party dispute). Given this situation, the court finds that the consideration of fairness to the parties weighs in favor of remanding this suit to the court in which it was originally filed.

Lastly, the *Gibbs* Court stated that in considering the factor of comity, the district court should remember that "[n]eedless decisions of state law should be avoided" to allow state courts the greatest possible latitude in interpreting their own laws. *See Gibbs*, 383 U.S. at 726. In this instance, the claims before the court rest entirely on Texas state law. The sole connection to federal law is a

17

tenuous bankruptcy filing in a different court. Out of respect for the Texas courts, this court should not retain supplemental jurisdiction to hear these claims as the Texas courts are better able to respond to questions involving state law. Accordingly, this court determines that there are compelling reasons to decline jurisdiction in these exceptional circumstances.

### IV. CONCLUSION

Under 28 U.S.C. § 1367, when the district court has original jurisdiction over *a civil action*, the court may exercise supplemental jurisdiction over other claims that are so related to the claims within the court's original jurisdiction that they form one constitutional case or controversy. *See Allapattah*, 125 S. Ct. at 2621 (emphasis added). While the court finds that the claims in the adversary proceeding before this court form one "case or controversy" with the pending claim in the bankruptcy court, it is unclear whether the withdrawn adversary and the separate bankruptcy case still form one "civil action." § 1367(a). However, the court need not decide whether it possesses supplemental jurisdiction over this suit. Because the adversary depends on supplemental jurisdiction to remain in federal court, and the court finds that it would decline to exercise that jurisdiction to the extent it may exist, the adversary must be remanded. Therefore, the plaintiff's motion to remand is GRANTED. All other pending motions are DENIED as moot.

It is so ORDERED.

Signed at Houston, Texas on February 9, 2007.

_____
Gray H. Miller
United States District Judge